DIXIE BROKERAGE & GUARANTY CO. *v.* BAILEY.

Division A.   Dec. 3, 1951.

No. 38123   (55 So. (2d) 438)

Lyell & Lyell, for appellant.

**John G. Burkett,** for appellee.

**Lee, J.**

The State Tax Collector, acting for the use and benefit of the City of Jackson, filed suit to recover from Dixie Brokerage & Guaranty Company unpaid privilege taxes and damages, alleged to be due, on account of its business of lending money at a greater rate of interest than 15% per annum. The cause was tried before the circuit judge, without the intervention of a jury, upon an agreed statement of facts and documentary proof. From a judgment for the plaintiff, the defendant appeals.

The appellant had an office in the City of Jackson. It began business there in April 1949. On April 15, 1949, Southern Discount Corporation of Baton Rouge, Louisiana, in writing, authorized appellant and its customers to draw drafts on the corporation's account in Fidelity National Bank of Baton Rouge, Louisiana.

The circumstances attendant upon the procurement of a loan were as follows: The customer signed a borrower's statement, which gave information about him as a credit risk. The posted schedule of charges and the nature of the services were explained. If the customer desired to proceed, he signed (1) the brokerage contract; (2) a note payable to Southern Discount Corporation, which was the sum total of the amount he was to receive, plus interest at 6% per annum, and plus the brokerage charges; and (3) a draft, payable to himself, and drawn on Southern Discount Corporation of Baton Rouge, Louisiana, for the amount of the note. As a general rule, appellant cashed the draft, after its endorsement by the customer, and from the proceeds, it received the interest

and its charges. Appellant unconditionally guaranteed the payment of the note. At the close of business, the notes of that day's business and the interest collected thereon were sent by appellant to the corporation by mail, and were delivered about two days later. The appellant placed the drafts which it had cashed for the day in an envelope draft, which it drew on the corporation for the total of the drafts in the envelope, and cleared the same through regular banking channels. The notes ran from thirty to ninety days, were payable weekly, semimonthly or monthly, and were actually paid at the office of the appellant, who, in turn, remitted to the corporation. If a customer failed to pay a note, appellant was required to pay the same by the end of the second month after maturity. Applications averaged about 300 a month, and about 40% were rejected. The interest and the so-called brokerage charges were greatly in excess of 15% of the principal.

Obviously, by reason of the written authorization, the appellant secured credit at the local banks for the amount of the drafts without waiting for their collection. The borrower had nothing to do with the collection of the draft. The appellant cashed the draft, signed by the customer. How could it have otherwise collected its charges? Whether or not a loan would be made was determined in Jackson, not in Baton Rouge. The money was counted out to the borrower in the office of appellant in Jackson. The borrower had obtained his money two or three days before Southern Discount Corporation even heard of him. The loan had already been completed and consummated before the supposed lender in Baton Rouge even knew about it. It was not until after the loan was fully consummated in Jackson that the appellant drew its draft on Southern Discount Corporation, and enclosed the drafts which it had cashed. The corporation therefore was required to pay the envelope draft before it could even see the draft which had been drawn by the customer.

The principles governing this litigation are set out in the recent case of Alt v. Bailey, Miss., 52 So. (2d) 283, and the authorities there cited. We are unable to see any distinction between that case and the one now before us.

Affirmed.